IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TIMMY GERALD WILSON, # 112023, )<br>)<br>   Petitioner, )<br>)<br>v. )<br>)<br>GWENDOLYN GIVENS, *et al.,* )<br>)<br>   Respondents. ) | Civil Action No.<br>2:19cv847-WHA-CSC<br>(WO) |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

Timmy Gerald Wilson, an Alabama inmate, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 wherein he challenges his 1990 conviction for rape in the first degree and his resulting sentence of life without parole. Doc. 1.[1] For the reasons discussed below, the court recommends that Wilson's petition be denied without an evidentiary hearing and dismissed with prejudice.

### I. BACKGROUND

**A.  State Court Proceedings**

   ***1.  Conviction and Direct Appeal***

On August 27, 1990, a Covington County jury found Wilson guilty of rape in the first degree involving a victim less than 12 years old, in violation of ALA. CODE § 13A-

---

[1] References to documents filed in this case are designated as "Doc." Pinpoint citations refer to page numbers affixed electronically by the CM/ECF filing system and may not correspond to pagination on the copies as submitted for filing.

6-61.² Doc. 11-1 at 148. On September 12, 1990, the trial court sentenced Wilson as a habitual felony offender to life in prison without the possibility parole. Doc. 11-1 at 154.

Wilson appealed, arguing that the State's evidence was insufficient to prove he engaged in sexual intercourse with the victim, an element of the charged rape. Doc. 11-3. On March 1, 1991, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming Wilson's conviction. Doc. 11-5. Wilson applied for rehearing, which was overruled. Doc. 11-6; Doc. 11-8 at 1. He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on May 31, 1991. Doc. 11-7; Doc. 11-8 at 1. A certificate of judgment issued on that same date. Doc. 11-8 at 1.

On April 27, 2018, over 27 years after his conviction, Wilson filed a *pro se* petition in the trial court seeking post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. Doc. 11-9 at 8–17. In his Rule 32 petition, Wilson claimed that newly discovered evidence required that his conviction be set aside. Specifically, he alleged that he "had recently learned of newly discovered evidence from a former Bailiff Sheriff's Officer Nicky Carley that the victim [. . . ], a key witness for the State [t]ending to show that the witness had subsequently recanted her sworn testimony at trial against him" and that "without the victim's testimony, the State could not have obtained a conviction." Doc. 11-9 at 13–17.

---

² ALA. CODE § 13A-6-61(a)(3) provides that "[a]person commits the crime of rape in the first degree if . . . [h]e or she, being 16 years or older, engages in sexual intercourse with a member of the opposite sex who is less than 12 years old."

2

The State filed an answer and moved to dismiss Wilson's petition, arguing it was time-barred under Ala. R. Crim. P. 32.2(c), insufficiently pleaded under Ala. R. Crim. P. 32.3 and 32.6(b), and without merit. Doc. 11-9 at 29–33. On September 5, 2018, the trial court entered an order granting the State's motion to dismiss and summarily denied Wilson's Rule 32 petition. Doc. 11-9 at 3, 34.

Wilson appealed, arguing that the trial court erred in denying his Rule 32 petition without affording him an evidentiary hearing on his claim of newly discovered evidence. Doc. 11-10. On May 17, 2019, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the denial of Wilson's Rule 32 petition. Doc. 11-12.

In its memorandum opinion, the Alabama Court of Criminal Appeals set out and applied the standard in Rule 32.1(e) of the Alabama Rules of Criminal Procedure for assessing claims of newly discovered evidence:

> To gain a new trial on the ground of newly discovered evidence, a petitioner must plead and prove:
>
> > "(e) [That] [n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
> >
> > > "(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
> > >
> > > "(2) The facts are not merely cumulative to other facts that were known;

3

> "(3) The facts do not merely amount to impeachment evidence;
>
> "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
>
> "(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."

Rule 32.1(e), Ala . R. Crim. P. Before an allegation can be considered a claim based on newly discovered evidence, it must meet all five requirements of Rule 32.1(e), Ala. R. Crim. P. *See Tarver v. State*, 769 So. 3d 338, 340–41 (Ala. Crim. App. 2000) ("We have repeatedly held that before a claim may be considered as newly discovered evidence the claim must meet the definition of newly discovered evidence found in Rule 32.1(e).").

In his petition, Wilson contends that "he had recently learned of newly discovered evidence from a formed [sic] Bailiff Sheriff's Officer Nicky Carley for the Covington County Circuit Court that the victim [. . . ], a key witness for the State tending to show that the witness had subsequently recanted her sworn testimony against him." (C. 13.) According to Wilson, the State's case against him relied primarily on her testimony. As a result, Wilson concludes that "without the victim's testimony, the State could not have obtained a conviction." (C. 14.)

Wilson, however, has failed to sufficiently plead the elements of newly discovered evidence. In particular, Wilson failed to sufficiently plead facts that "establish that [he] is innocent." Rule 32.1(e)(5), Ala. R. Crim. P. Wilson fails to plead how the recanted testimony would exonerate him in light of the other evidence of his guilt presented at trial. *Moody v. State*, 95 So.3d 827, 857 (Ala. Crim. App. 2011) (stating that "bare and conclusory" allegations are insufficient to support a claim of newly discovered evidence). Because Wilson failed to sufficiently plead his claim of newly discovered evidence, the circuit court did not err in dismissing his claim. *See* Rule 32.7(d), Ala. R. Crim. P.

Doc. 11-12 at 2–3.

4

Wilson applied for rehearing, which was overruled. Docs. 11-13 & 11-14. He then filed a petition for writ of certiorari with the Alabama Supreme Court, which that court denied on August 9, 2019. Docs. 11-15 & 11-16. A certificate of judgment issued on that date. Doc. 11-16.

**B.    Wilson's § 2254 Petition**

Wilson filed this § 2254 petition on September 25, 2019.[3] Doc. 1. In his petition, he reasserts his claim that newly discovered evidence, i.e., the victim's alleged recantation, establishes his actual innocence of the rape charge and requires that his conviction be set aside. Doc. 1 at 6. Respondents contend that Wilson's § 2254 petition is time-barred by AEDPA's statute of limitations and that, even if his petition is not time-barred, his claim lacks merit and provides no basis for relief. Doc. 11 at 5–10.

## II.  DISCUSSION

**A.    AEDPA's One-Year Limitations Period**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") contains the following time limitations for federal habeas petitions:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

---

[3] Wilson's petition was date-stamped as received by the court on November 1, 2019. Doc. 1 at 1. However, under the "prison mailbox rule," the court deems the petition to be filed on September 25, 2019, the date Wilson represents that he signed it and presumptively delivered it to prison authorities for mailing. Doc. 1 at 8. *See Houston v. Lack*, 487 U.S. 266, 271–72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999).

>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### 1. *Computation of Timeliness*

In most cases, a § 2254 petition must be filed within a year after the date on which the state court's judgment of conviction becomes final, either by the conclusion of direct review or the expiration of time for seeking direct review. *See* 28 U.S.C. § 2244(d)(1)(A); *Pugh v. Smith*, 465 F.3d 1295, 1298 (11th Cir. 2006). Here, during direct review, after the Alabama Court of Criminal Appeals affirmed Wilson's conviction, Wilson sought certiorari review in the Alabama Supreme Court. That court denied Wilson's petition for writ of certiorari on May 31, 1991, and a certificate of judgment issued on that same date. Because Wilson sought certiorari review in Alabama's highest court, he was allowed 90

days after the state court's May 31, 1991 issuance of a certificate of judgment to seek certiorari review in the United States Supreme Court. *See Stafford v. Thompson*, 328 F.3d 1302, 1303 (11th Cir. 2003). Wilson filed no petition for writ of certiorari in the U.S. Supreme Court. Therefore, for purposes of AEDPA, his conviction became final on August 29, 1991 (i.e., 90 days after May 31, 1991).

The AEDPA became effective on April 24, 1996. *See Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998). The Eleventh Circuit has held that "application of the one-year time bar in 28 U.S.C. § 2244(d) to petitions of prisoners, like [Wilson], whose convictions became final long prior to the effective date of the AEDPA … 'would be unfair, and impermissibly retroactive.' [*Goodman v. United States*, 151 F.3d 1335, 1337 (11th Cir. 1998)]." *Wilcox*, 158 F.3d at 1211. Thus, the Eleventh Circuit adopted a "grace period" for petitioners whose convictions became final before enactment of the AEDPA, which allows such persons a reasonable time of "one year from the AEDPA's effective date"—i.e., until April 24, 1997—to file a federal habeas petition. *Id*. Because Wilson's conviction became final before enactment of AEDPA, he had until April 24, 1997, absent some effective tolling event, to file a petition under § 2254.

### 2.  *Statutory Tolling*

Pursuant to 28 U.S.C. § 2244(d)(2), AEDPA's one-year statute of limitations is tolled during the pendency of a properly filed state court petition. *See* 28 U.S.C. § 2244(d)(2). Wilson filed no state postconviction petitions between April 24, 1996, when the one-year "grace period" began to run, and April 24, 1997, when the limitation period expired after running unabated for one year. Although Wilson filed a Rule 32 petition on

April 27, 2018, that petition had no tolling effect under § 2244(d)(2), because AEDPA's limitation period expired on April 24, 1997—long before the petition was filed. "[O]nce a deadline has expired, there is nothing left to toll." *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004). "A state court filing after the federal habeas deadline does not revive" the statute of limitations period applicable to federal habeas review. *Id.*; *see also Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).

While he does not cite the statute, Wilson implies that the triggering date in 28 U.S.C. § 2244(d)(1)(D) applies to his claim and that AEDPA's statute of limitations should run from the time he learned that the victim had recanted her trial testimony. *See* Doc. 1 at 6; Doc. 14. Under § 2244(d)(1)(D), the one-year limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The limitation period under § 2244(d)(1)(D) starts when the new evidence was discoverable through the exercise of due diligence, not when the new evidence was actually discovered. *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), vacated on other grounds, 561 U.S. 1001 (2010).

Although "[m]ultiple courts have held that a witness's recantation can serve as the factual predicate from which the limitations period begins to run," *DiCaprio-Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 557 (E.D. Va. 2010), Wilson does not state with specificity when he learned of the victim's alleged recantation, other than to say he "recently learned" of it from "former Bailiff Sheriff's Officer Nicky Carley." In neither his § 2254 petition nor the proceedings in state court, e.g., in his Alabama Rule 32 petition, does Wilson say when he learned from Carley that the victim had recanted her trial testimony. Nor does he

8

explain the circumstances under which he purportedly learned from Carley that the victim had recanted. Because there is a lack of evidence in the record on these matters, the court cannot find that Wilson was unable to discover the factual predicate for his claim on some earlier date, or, more particularly, within one year of the time he filed his § 2254 petition or, if he obtained tolling under § 2244(d)(2), within one year of his filing his state Rule 32 petition. Because Wilson does not establish when he learned of the victim's alleged recantation, he fails to demonstrate that the recantation was not discoverable at some earlier time through the exercise of due diligence. Consequently, the court finds that § 2244(d)(1)(D) does not provide the triggering date for AEDPA's statute of limitations in Wilson's case.[4]

Here, under the one-year grace period recognized by the Eleventh Circuit, *see Wilcox*, 158 F.3d at 1211, AEDPA's statute of limitations expired on April 24, 1997. Wilson filed his § 2254 petition on September 25, 2019—making it untimely by over 22 years.

**B.    Actual Innocence**

Notwithstanding AEDPA's statute of limitations, it has been recognized that an untimely petition can be overcome—thereby opening the door to review—through a credible showing of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013). A petitioner so asserting actual innocence must establish that, in light of new evidence, "it

---

[4] Wilson also sets forth no facts or arguments to establish a tolling event under 28 U.S.C. § 2244(d)(1)(B) or (C); i.e., he has not shown that an unlawful state action impeded him from filing a timely § 2254 petition or that his claims are based on a right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review.

9

is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623–24 (1998). In *Schlup*, the Supreme Court stated:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Wilson asserts his actual innocence as a gateway to review of his otherwise time-barred § 2254 petition. He relies on the victim's alleged recantation and argues that without the victim's now-recanted testimony, the State could not have obtained his conviction. Doc. 1 at 6; Doc. 14 at 1. Wilson's assertions are grossly insufficient to sustain a claim of actual innocence, and he provides no specific facts to substantiate his claim. He submits no affidavit from the victim containing a recantation of her testimony. He submits no affidavit from Carley explaining how he came to know of the victim's alleged recantation. He does not identify what testimony the victim allegedly recanted or, as noted, when the recantation supposedly occurred. There are simply no indicia of reliability, trustworthiness, or credibility for Wilson's assertion that the victim recanted her trial testimony.

In light of the thin reed upon which Wilson seeks to hang his claim, the court finds Wilson has failed to satisfy the actual-innocence exception to the habeas statute's time-bar as articulated in *Schlup*. Put most succinctly, "the actual innocence exception remains only

a safety valve for the extraordinary case." *Schlup*, 513 U.S. at 333 (O'Connor, J., concurring) (internal quotation marks omitted), and Wilson's is not such a case.[5] Because Wilson fails to make a colorable claim of actual innocence, his petition is time-barred and the claim therein is subject to no further review.

C.  **Merits of Claim**

Even if Wilson's petition is not time-barred, his claim is due to be denied on the merits, because the state court's adjudication of the claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings.

The AEDPA imposes "a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quotes and cite omitted). This court cannot disturb state court rulings on fully adjudicated issues unless they

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5] The court notes that the Eleventh Circuit has left open the question of whether "freestanding" actual-innocence claims may be brought in non-capital cases. *See Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010); *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007). Assuming that Wilson were permitted to assert actual innocence as a freestanding claim, he still would be subject to AEDPA's procedural restrictions, including the limitations period under § 2244(d). *See, e.g., Moody v. Thomas*, 89 F.Supp. 3d 1167, 1270–71 (N.D. Ala. 2015) (freestanding actual-innocence claim, if cognizable, was subject to exhaustion requirement).

28 U.S.C. § 2254(d). This is a highly deferential, "difficult to meet" standard that petitioners must overcome. *Harrington v. Richter,* 562 U.S. 86, 102 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (quoted in *Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) (en banc)).

And "§ 2254(d) applies even to summary state court opinions, as well as to opinions that do not cite Supreme Court precedent." *Means v. Sec'y, Dep't of Corrs*., 433 F. App'x 852, 853 (11th Cir. 2011) (citing *Harrington*, 562 U.S. at 98–99). So, if a state court's decision is unaccompanied by any legal analysis or explanation, the petitioner must still show there was no reasonable basis for the state court to deny relief. *Johnson v. Sec'y, Dep't of Corrs.*, 643 F.3d 907, 930 n.9 (11th Cir. 2011). This court also must presume state court factual determinations to be correct; petitioners must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

In affirming the trial court's denial of Wilson's Rule 32 petition, the Alabama Court of Criminal Appeals held that Wilson's claim of witness recantation failed to satisfy the standard for claims of newly discovered evidence set out in Ala. R. Crim. P. 32.1(e), particularly, that Wilson failed to sufficiently plead facts that established his innocence, a requirement of Rule 32.1(e)(5). Doc. 11-12 at 3. Although this Court finds no definitive statement by the United States Supreme Court concerning recantation of witness testimony,

Justices Brennan and Marshall, in a dissent from the denial of certiorari, expressed the prevailing view among lower courts. *See Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34 (1984) (Brennan, J., dissenting from denial of certiorari) (quoting and citing *Brown v. State*, 381 So.2d 690, 692–93 (Fla. 1980)). Justice Brennan, joined by Justice Marshall, stated:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."

*Id.*

On this subject, the Eleventh Circuit has repeatedly stated that "recantations are viewed with extreme suspicion by the courts." *In re Davis*, 565 F.3d 810, 825 (11th Cir. 2009) (quoting *United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988)); *United States v. Smith*, 433 F.2d 149, 150–51 (5th Cir. 1970) (quoting *Newman v. United States*, 238 F.2d 861, 862 n.1 (5th Cir. 1956)); *United States v. Dumas*, 280 F. App'x 848, 852 (11th Cir. 2008). Other federal courts of appeal have also viewed recantations with suspicion. *See United States v. Jackson*, 427 F. App'x 109, 112 (3d Cir. 2001) ("Courts have historically viewed recantation testimony with great suspicion.") (quotations and citations omitted); *United States v. Miner*, 131 F.3d 1271, 1273 (8th Cir. 1997) ("Courts look upon recantations with suspicion."); *Spence v. Johnson*, 80 F.3d 989, 997 (5th Cir. 1996) ("recanting affidavits and witnesses are viewed with extreme suspicion by the courts" (internal citation and quotations omitted)); *Haouari v. United States*, 510 F.3d 350,

13

353 (2d Cir. 2007) ("It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'" (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003))); *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992) ("[N]ew trial motions based on recanted testimony are immediately suspect." (citing *United States v. Ward*, 544 F.2d 975, 976 (8th Cir. 1976)).

The Ninth Circuit has stated that "[r]ecanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Jones v. Taylor*, 763 F.3d 1242, 1248 (2014) (9th Cir. 2014) (quotation omitted). "For these reasons, a witness' 'later recantation of his trial testimony does not render his earlier testimony false.' Rather, a witness' recantation is considered in addition to his trial testimony and in the context in which he recanted when assessing the likely impact it would have on jurors." *Id*. (internal citation omitted).

As noted above in this court's assessment of Wilson's assertion of actual innocence, Wilson provides no specific facts to substantiate his claim of witness recantation. There is no affidavit from the victim containing a recantation of her testimony and no affidavit from Carley stating he was aware of any recantation by the victim. The circumstances and nature of the alleged recantation remain unexplained. Even assuming a recantation by the victim existed and that it was relatively recent, it would be inherently suspect. *See Williams v. Hoffner*, 2016 WL 2937130, at *7 (E.D. Mich. May 20, 2016) ("Harvey apparently did not indicate that he was willing to recant his trial testimony until five years after Petitioner's trial and did not execute his affidavits until 16 years after trial. Such a long delay in coming

14

forward renders his recantation inherently suspect."); *Olson v. United States*, 989 F.2d 229, 232 (7th Cir. 1993) (finding recantation made over four years after trial testimony to be suspect); *Lewis v. Smith*, 100 F. App'x 351, 355 (6th Cir. 2004) (finding it proper for district court to reject as suspicious a witness's recanting affidavit made two years after trial); *Bates v. Metrish*, 2010 WL 1286413, at *11 (E.D. Mich. Mar. 30, 2010) (finding recantation "suspect and unreliable" because the witness "waited 10 years after the trial to indicate that he was willing to recant his trial testimony and 16 years after trial to execute his affidavit").

Moreover, any recantation by the victim would have to be weighed against her trial testimony against Wilson and the other evidence presented at trial. As the Alabama Court of Criminal Appeals noted in its memorandum opinion, in addition to the victim's testimony, there was other evidence of Wilson's guilt presented at trial. Doc. 11-12 at 3. An examining physician testified that the victim exhibited several physical signs of having been sexually abused. Doc. 11-1 at 55–58. The state court's decision is entitled to deference, absent a showing that its adjudication of Wilson's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence in the state court proceeding. 28 U.S.C. § 2254(d). Wilson has not shown that the conclusion reached by the state court was incompatible with any factually similar Supreme Court case. Likewise, he has failed to demonstrate that the state court's application of the legal standard was objectively unreasonable or that the findings of fact on which it is based are unreasonable in light of the record evidence.

Here, particularly where the only evidence regarding witness recantation is Wilson's assertion, unsupported by specific facts, that he learned from former Bailiff Sheriff's Officer Nicky Carley that the victim had recanted her trial testimony, Wilson demonstrates no entitlement to federal habeas relief.

### III.  CONCLUSION

For these reason, it is the RECOMMENDATION of the Magistrate Judge that Wilson's § 2254 petition be DENIED and that this case be DISMISSED with prejudice.

It is further ORDERED that, by **September 14, 2022**, the parties may file written objections to this Recommendation. An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a *de novo* determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 31st day of August 2022.

                         /s/ Charles S, Coody
                         CHARLES S. COODY
                         UNITED STATES MAGISTRATE JUDGE